IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MARCH SESSION, 1995

FILED

December 9, 1997

Cecil W. Crowson
Appellate Court Clerk

STATE OF TENNESSEE,          )
                             )
          Appellee,          )          No. 01C01-9407-CR-00252
                             )
                             )          Davidson County
v.                           )
                             )          Honorable Thomas H. Shriver, Judge
                             )
ANTHONY NOE,                 )          (Vandalism over $500.00 and making a
                             )            false report)
                             )
          Appellant.         )

For the Appellant:                      For the Appellee:

Lionel R. Barrett, Jr.                  Charles W. Burson
Washington Square Two                   Attorney General of Tennessee
222 Second Avenue, North                     and
Nashville, TN 37201                     Charlotte H. Rappuhn
(AT TRIAL AND ON APPEAL)                Assistant Attorney General of Tennessee
                                        450 James Robertson Parkway
Karl Dean                               Nashville, TN 37243-0493
District Public Defender
     and                                Victor S. Johnson, III
Paul Newman                             District Attorney General
David Baker                                  and
Assistant Public Defenders              Mary Hausman
Stahlman Building                       Bill Reed
Nashville, TN 37201                     Assistant District Attorneys General
(AT TRIAL)                              102 Metro Courthouse
                                        Nashville, TN 37201

OPINION FILED:_____

VANDALISM CONVICTION AFFIRMED; FALSE REPORT CONVICTION REVERSED

Joseph M. Tipton
Judge

# O P I N I O N

The defendant, Anthony Noe, was convicted in a jury trial in Davidson County Criminal Court of vandalism that resulted in over $500.00 worth of damages, a Class E felony, and of making a false report, a Class A misdemeanor. He was sentenced as a Range I, standard offender to one year for vandalism to be served concurrently with a sentence of eleven months and twenty-nine days for the false report conviction. The trial court ordered that the sentences be suspended and served in a community corrections program. The defendant contends that the evidence is insufficient to support his convictions and that the trial court erred by refusing to grant a continuance after his counsel was appointed on the day of trial.

This case involves a dispute between the defendant and his neighbors, Ruth and John Finley, over a fence that extends from the Finleys' property into an undeveloped alley that is owned by the Nashville Metropolitan Government (Metro) and that abuts the defendant's property. The proof at trial established that the defendant cut a portion of the fence after he made several inquiries to various Metro officials and learned that Metro refused to get involved in the fence dispute because it was not interested in developing the alley. After the defendant was arrested for damaging the fence, he signed an arrest warrant charging Mr. Finley with vandalism of the alley. The defendant does not deny cutting the fence or reporting that Mr. Finley vandalized the alley.

At trial, John Finley testified that there has been a fence in the same place behind his house since at least 1949. He explained that he replaced part of the fence in 1986. He said that the defendant called him on December 30, 1991, and warned him that he would cut the fence the next morning. Mr. Finley said that the next morning he saw the defendant cut eight to ten feet of the fence. Mr. Finley laced the fence back

2

together.  However, the following day, he noticed that the fence had been cut again, near the anchor post.  Mr. Finley said that his fence was ruined and that the fence was worth between one $1,000.00 and $1,100.00.

Mr. Finley testified that he was arrested on May 8, 1992, and identified the arrest warrant.  The affidavit in support of the warrant is signed by the defendant and states that the defendant has probable cause to believe that John Finley had "dirt, rock and sand dumped in public alley #1839 and then fenced in said pollution and thus caused great and considerabe (sic) inconvience (sic) to myself and others that need access to the rear of their property."  The affidavit states that the defendant based these allegations on statements that Mr. Finley made to him, the police and to the Metro Codes division.  Mr. Finley denied dumping dirt, rock and sand in the alley.  He further explained that the presence of an eight to ten foot rock bluff would make it impossible to drive a vehicle through the undeveloped alley, even in the absence of the fence.

On cross-examination, Mr. Finley admitted that he had a load of dirt dumped in the alley and leveled off so that he could get back there to mow.  Mr. Finley explained that the dirt that was dumped was topsoil and did not contain gravel or rocks.  He explained that he used the dirt to cover some rocks and a manhole and that he also placed a pipe over the manhole so that it could be easily located.  Mr. Finley said that he told the defendant what he had done.  Although Mr. Finley denied telling the Metro Codes division about dumping the topsoil, he explained that there was another time that the Metro Codes division stopped him from having rock and dirt dumped in the alley area.  He explained that in 1984, while the state was building a nearby interstate highway, a state superintendent offered to fill in the alley with rock and dirt.  Mr. Finley said that his neighbors at the time approved of this action but that Metro Codes division contacted him and told him that it could not be done.

3

James Butler, an outside salesman with Sears Roebuck and Company (Sears), testified for the defense as an expert in the field of repairing or replacing damaged fences. He explained that Sears does not carry the type of welded wire fence that the defendant cut. However, he said that he could sell better, more expensive, galvanized chain-link fencing to replace the damaged portion of the fence. He explained that the fence could be restretched so that only the portion that was cut needed to be replaced. He testified that the cost for replacing the damaged portion of the fence with a chain-link fence would be $265.00. According to Mr. Butler, replacing one hundred feet of fence at the back of the property would cost $537.00.

During the state's rebuttal, Mr. Finley testified that he thought that the whole fence needed to be replaced. He explained that once the fence was cut near the post, it could not be restretched to the same tension as it was before it was cut. He also said that he did not know how a chain-link fence would work with the present fence, but he believed that it would not look right unless the fence surrounding the damaged portion was also replaced with chain-link fencing. Mr. Finley said that it would take one hundred and sixty-five feet of fencing to replace the entire fence.

# I

The defendant contends that the evidence is insufficient to support his vandalism conviction. The defendant argues that he did not have the requisite intent to commit vandalism because ownership of the fence was disputed. He asserts that he was acting in a noncriminal fashion when he cut the fence because he was only trying to remove property that was violative of his rights in that it blocked the alley. He also argues that the state failed to prove that the value of the damaged property was in excess of $500.00.

4

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we may not reweigh the evidence, but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978).

Vandalism occurs when a person "knowingly causes damage to or the destruction of any real or personal property of another or of the state, the United States, any county, city, or town knowing that he does not have the owner's effective consent." T.C.A. § 39-14-408(a). The definition of damage "includes, but is not limited to [d]estroying, polluting or contaminating property; or [t]ampering with property and causing pecuniary loss or substantial inconvenience to the owner or a third person". T.C.A. § 39-14-408(b).

"Acts of vandalism are to be valued according to the provisions of § 39-11-106(35) and punished as theft under § 39-14-105." T.C.A. § 39-14-408(c)(1991). The definition of value under T.C.A. § 39-11-106(35)(1991) includes the fair market value of the property at the time of the offense, or "[i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense." <u>Id</u>.

When viewed in the light most favorable to the state, see <u>Cabbage</u>, 571 S.W.2d at 835, the proof at trial showed that the defendant intentionally damaged Mr. Finley's fence. On December 30, 1991, the defendant called Mr. Finley and threatened

5

to cut the fence the next morning. The next day the defendant cut eight to ten feet of the fence. According to Mr. Finley, the defendant ruined the entire fence by cutting it near the anchor post. Mr. Finley said that the fence was worth between $1,000.00 and $1,100.00. Mr. Butler testified that it would cost $537.00 to replace one hundred feet of the fence. Although Mr. Butler also testified that the fence could be restretched with only a small portion of it being replaced, the jury obviously rejected this testimony. It is not our function to reweigh the evidence on appeal. Based on the proof presented at trial, the jury was justified in concluding that the defendant committed vandalism of property in an amount over $500.00.

## II

The defendant also challenges the sufficiency of the evidence with respect to his conviction for making a false report. First, he asserts that the report was not false because Mr. Finley admitted dumping dirt in the disputed area. Second, he argues that the state failed to show that he knew the information he reported was false. The state counters that sufficient evidence supports the defendant's false report conviction.[1]

In this case, the state had the burden of proving that the defendant reported an incident or offense to an officer while knowing that the offense or incident did not occur. See T.C.A. § 39-16-502(a)(1)(A). Even viewing the proof in the light most favorable to the state, we are unable to say that the state met its burden.

The false report charge in this case involves an affidavit signed by the defendant that states that he has probable cause to believe that Mr. Finley dumped dirt, rock, and sand in the alley and then fenced "said pollution" in, causing considerable

---

[1] The state also contends that this court may not fully analyze this issue because the arrest warrant sworn to by the defendant is not part of the record before us. However, a copy of the warrant was entered into evidence as an exhibit during the trial and is part of the record on appeal.

inconvenience to the defendant and others. In the affidavit, the defendant stated that he based these allegations on statements that Mr. Finley made to him, the police and to the Metro Codes division.

Although the proof at trial did not show that Mr. Finley vandalized the alley, we do not believe that the state proved that the defendant reported an incident or offense while <u>knowing</u> that it did not occur. At trial, Mr. Finley denied dumping rock and sand in the alley. However, he admitted that he had a load of dirt dumped within the fenced area of the alley over some rocks and the manhole cover that were there. Mr. Finley also testified that he told the defendant about what he had done. Although Mr. Finley denied telling the Metro Codes division about dumping the dirt, he did admit that the division stopped him from having rock and dirt dumped in the alley at one other time. Based on these undisputed facts, we are unable to say that the defendant reported the dumping in the alley while knowing that it did not occur.

_____The state argues that the information contained in the warrant is false because it implies that the fencing and obstructing of the defendant's access to his property occurred shortly before the warrant was sworn, when, the proof at trial established that Mr. Finley's fence, in one version or another, was already on the property when the defendant purchased his property. However, the affidavit in support of the warrant does not state when the alleged dumping occur. The false report statute says nothing about holding a person criminally responsible solely because a report can be construed to imply an incorrect time that the incident or offense occurred.

The state also argues that there was no support for the defendant's allegation that Mr. Finley dumped pollution into the alley. The state asserts that the testimony at trial indicated that Mr. Finley merely placed enough dirt over the manhole cover to mow over it. Although we agree with the state that the proof at trial did not

7

show that Mr. Finley polluted the alley, <u>see</u> T.C.A. § 39-14-408(2), the proof at trial did demonstrate that there were rocks in the alley and that Mr. Finley dumped dirt into the fenced area. Mr. Finley also admitted that the Metro Codes division stopped him from having dirt and rocks dumped in the alley. When taken in context, the reference to pollution in the affidavit refers to the dirt, rock, and sand, that the defendant alleged Mr. Finley dumped in the alley. We recognize that the proof at trial did not establish that Mr. Finley dumped rocks and sand into the alley. However, in our view, the state failed to meet its burden of proving beyond a reasonable doubt that the defendant knew at the time he made the report that the incident alleged in the warrant had not occured.

### III

The defendant contends that the trial court erred in not granting him a continuance after counsel was appointed on the day his trial was to begin. The defendant concedes that his trial attorney "tried the case well, based upon the limited time he had to prepare," but he argues that the fact that the attorney only had one day to attempt to prepare for his case is a <u>per se</u> violation of his right to counsel. We disagree with the defendant's contention.

The record reflects that the trial court appointed the Davidson County Public Defender's office to represent the defendant at his arraignment. On November 18, 1992, the trial court relieved the Public Defender's office, ruling that the defendant was not indigent and should be able to secure his own counsel. According to the trial court, it informed the defendant that he needed to hire his own attorney on at least six occasions before the defendant's trial date, January 25, 1993. On the day that the trial was to begin, the defendant arrived without an attorney and again argued that he was indigent. The trial court reappointed the attorney who represented the defendant at his arraignment but ordered the defendant to pay $2,000.00 in attorney fees. The attorney informed the court that he had received all the discovery material provided by the state,

8

and the court continued the trial until the next day to give the attorney more time to prepare. Although the attorney initially requested that he have more than one day to prepare, he later told the trial court that he would prefer to begin the trial the following morning instead of the following afternoon.

The granting of a continuance rests within the sound discretion of the trial court. Moorehead v. State, 219 Tenn. 271, 409 S.W.2d 357, 358 (1966). A reversal may only occur if the denial was an abuse of discretion and the defendant was improperly prejudiced in that a different result might reasonably have been reached if the continuance had been granted. See State v. Dykes, 803 S.W.2d 250, 257 (Tenn. Crim. App. 1990); Baxter v. State, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973). Thus, it is incumbent upon the defendant to show that he was prejudiced. The defendant has failed to demonstrate that the trial court abused its discretion or that he was prejudiced by the trial court's actions.

In consideration of the foregoing, the defendant's conviction for vandalism in an amount greater than $500.00 is affirmed, and his conviction for making a false report is reversed.

_____
Joseph M. Tipton, Judge

CONCUR:


_____
David G. Hayes, Judge


_____
Jerry Scott, Special Judge

9